UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

LA PECORA BIANCA HOLDINGS, LLC, LPB1 LLC AND LPB2 LLC,

                                                   **Plaintiffs,**

                                                    v.

EMPOWERED HOSPITALITY LLC AND SARAH DIEHL,

                                                **Defendants.**

**1:19-cv-09655-ALC**

**AMENDED OPINION AND ORDER**

------------------------------------------------------------------x

**ANDREW L. CARTER, JR., District Judge:**

The Court now considers a motion by Defendants Empowered Hospitality LLC and Sarah Diehl to dismiss the Amended Complaint by Plaintiffs La Pecora Bianca Holdings, LLC ("Holdings"), LPB1 LLC, and LPB2 LLC. For the reasons that follow, the motion is GRANTED in part and DENIED in part.

## BACKGROUND

This matter arises from Plaintiffs' dissatisfaction with human resources consulting services provided by Defendants.

Holdings is the sole member of LPB1 and LPB2, both of which operate restaurants. LPB1 operates a restaurant that does business under the name "La Pecora Bianca NoMad", which is located at 1133 Broadway, New York, New York 10010. LPB2 operates a restaurant

1

that does business under the name "La Pecora Bianca Midtown", which is located at 950 Second Avenue, New York, New York 10022.

Mark Barak, who is the person principally involved in managing both LPB1, LPB2, and the respective restaurants operated by them, sought a human resources consultant in late February 2017. Barak's primary purpose was to ensure the restaurants were in compliance with wage and hour law to avoid litigation.

Between March 9, 2017 and May 15, 2017, Diehl entered into a series of e-mail exchanges and phone calls with Barak. Plaintiffs allege that during these exchanges Diehl: "specifically held herself out to Barak as being extensively well experienced in hospitality HR and restaurant management for not less than 5 years", AC ¶ 24; "represented . . . that she had been in charge of HR at a New York based hospitality group for several years after that, during which time she had overseen all the HR systems and wage and hour compliance for thousands of restaurant employees," AC ¶ 25; "represented herself . . . as being extensively knowledgeable in the specialized field of hospitality HR to put . . . La Pecora Bianca NoMad . . . and . . . La Pecora Bianca Midtown, into full wage and hour compliance", AC ¶ 26, and "represented that it was part of her responsibility to keep abreast of all ongoing developments in this field, so all compliance would remain current", AC ¶ 27.

On or about May 15, 2017 Holdings and Diehl's consulting firm, Empowered Hospitality LLC, entered an Independent Contractor Agreement ("Agreement") for human resources consulting work. The Agreement incorporates a Scope of Work that includes certain tasks which Plaintiffs allege Diehl failed to complete. Among these tasks was "a [c]ompliance audit of current HR Documents" and a "compliance audit of processes & practices" "[i]ncluding employee relations, wage & hour practices, scheduling, etc." ECF No. 24-3 at 1.

As part of the initial audits, "Empowered was obligated to . . . review . . . the NY Wage Acknowledgement Forms for each employee to assure compliance with the minimum wage, tip credit, and meal credit requirements for all tipped employees." AC ¶ 42. However, Plaintiffs allege that Diehl filled out these forms incorrectly and in a manner showing "a complete lack of understanding of how to go about performing [the] task". AC ¶ 45.

Plaintiffs further allege that Defendants "neglected to conduct the audit of the LPB1 and LPB2 employees' pre-existing NY Wage Acknowledgement forms properly, and failed to correct and/or replace numerous forms which were facially incorrect", AC ¶ 50; "failed to notify any of the Plaintiffs that sharing tips with non-tipped staff was not a permissible practice, despite their knowledge that this practice was ongoing", AC ¶ 51; and "failed to notify any of the Plaintiffs that deductions from employee's pay for any breakage was not a permissible practice, despite [Defendants'] knowledge that this practice was ongoing", AC ¶ 52.

Plaintiffs allege that these failings by Defendants led to a February 6, 2018 class action lawsuit against LPB1 and LPB2 in New York state court alleging that LPB1 and LPB2 violated New York Labor Law. Plaintiffs also allege both that Empowered directly violated wage and hour laws by improperly completing forms and thereby caused or increased the likelihood of a class action being brought. Plaintiffs allege that they were damaged in the amount of $462,500, the amount for which LPB1 and LPB2 settled the class action lawsuit. Plaintiffs allege they were further damaged because they had to pay to defend the lawsuit, and have suffered loss of reputation and goodwill.

Based on the foregoing facts, Plaintiffs seeks to recover under three causes of action: negligence in providing human resources services by Empowered (Count I); breach of contract by Empowered (Count II); and fraud and deceit against Empowered and Diehl (Count III).

3

On April 20, 2020, Defendants moved to dismiss the Amended Complaint pursuant to Rule 12(b)(6) for failure to state a claim. ECF No. 28. On May 25, 2020, Plaintiffs filed an opposition to that motion. ECF No. 31. Defendants replied on June 15, 2020. ECF No. 34.

## STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint that fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (internal quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. *Id.* at 679.

## DISCUSSION

*Count II Breach of Contract by Empowered*

To establish a breach of contract under New York law, a plaintiff must plead the following elements: (i) the existence of a contract; (ii) performance of the contract by one party; (iii) a breach of the contract by another; and (iv) damages resulting from the breach. *See Terwilliger v. Terwilliger*, 206 F.3d 240, 245-46 (2d Cir.2000). "In order to state a viable breach

4

of contract claim a plaintiff must at the very least identify a contractual provision that the defendant breached." *Ellinghaus v. Educ. Testing Serv.*, No. 15-cv-3442 (SJF)(AKT), 2016 U.S. Dist. LEXIS 139918, at *15 (E.D.N.Y. Sep. 30, 2016) (citing *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 189 (S.D.N.Y. 2011)).

Defendants' main argument for dismissal of the breach of contract claim is that Plaintiffs have not alleged what contractual provision was violated. Instead, Defendants argue that the Amended Complaint seeks to hold Defendants liable for "(i) Plaintiffs' wage payments to their employees; (ii) Plaintiffs' improper use of tip money; and (iii) the Class Action Settlement wherein Plaintiffs agreed to pay damages to Plaintiffs' employees for alleged wrongdoings by Plaintiffs over a period of time which spanned several years." Mot. (ECF No. 19) at 9. This is an incomplete characterization of the Amended Complaint. In fact, Plaintiffs allege that Defendants failed to perform specific tasks in the scope of work that was incorporated into the Agreement. Accepting the allegations in the Amended Complaint as true, the Court concludes that Plaintiffs have sufficiently pleaded the breach of a specific contract provision.

Defendants also argue that Plaintiffs LPB1 and LPB2 may not proceed against them and no party may proceed against Diehl because LPB1, LPB2, and Diehl are not parties to the Agreement, and LPB1 and LPB2 are not third-party beneficiaries. Plaintiffs clarified that they do not intend to proceed against Diehl for breach of the Agreement. As to LPB1 and LPB2, Plaintiffs contend that they are intended beneficiaries of the Agreement, and accordingly may recover. With Plaintiffs having disclaimed any contract action against Diehl, the Court need only consider whether Plaintiffs have sufficiently pleaded that LPB1 and LPB2 are third party beneficiaries and therefore may proceed against Empowered.

"Under New York law in order to recover as a third-party beneficiary of a contract, a claimant must establish that the parties to the contract intended to confer a benefit on the third party." *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 124 (2d Cir. 2005) (citing State *of Cal. Pub. Employees' Ret. Sys. v. Shearman & Sterling*, 95 N.Y.2d 427, 741 N.E.2d 101, 104, 718 N.Y.S.2d 256 (N.Y. 2000)). As stated in Restatement (2d) of Contracts § 302, and adopted by the New York Court of Appeals:

> Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

*Id.* (citing *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*, 66 N.Y.2d 38, 485 N.E.2d 208, 212, 495 N.Y.S.2d 1 (N.Y. 1985)). "A contractual requirement that the promisor render performance directly to the third party shows an intent to benefit the third party." *Id.* (citing *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 249 (2d Cir. 2002)). But, "dismissal of a third-party-beneficiary claim is appropriate where the contract rules out any intent to benefit the claimant, or where the complaint relies on language in the contract or other circumstances that will not support the inference that the parties intended to confer a benefit on the claimant". *Id.* at 124-25 (citations omitted).

Here, the Agreement does not explicitly mention LPB1 or LPB2 or any other third-party beneficiary. However, Defendants have cited no provision of the Agreement that rules out the intent to benefit LPB1 and LPB2. Instead, the Scope of Work contemplates services rendered to LPB1 and LPB2. For example, the audits and compliance work pertain directly to employees of LPB1 and LPB2. The Court concludes this sufficiently pleads a contractual requirement that Empowered render performance directly to the LPB1 and LPB2. Accordingly, at this stage,

6

Plaintiffs have pleaded that LPB1 and LPB2 are intended beneficiaries of the Agreement. The Court therefore declines to dismiss these Plaintiffs from the contract claim.

Defendants also argue that Plaintiffs seek to hold Defendants liable for Plaintiffs' actions or inactions in connection with "(i) Plaintiffs' wage payments to their employees; (ii) Plaintiffs' improper use of tip money; and (iii) the Class Action Settlement wherein Plaintiffs agreed to pay damages to Plaintiffs' employees for alleged wrongdoings by Plaintiffs over a period of time which spanned several years." ECF No. 29 at 9. Defendants further argue that "[a] failure to correct a mistake in the documentation for the onboarding of one employee during the short period of time in which Empowered was assisting Holdings with its human resources functions does not amount to an entitlement of indemnification to repay Plaintiffs for the sums they voluntarily paid." ECF No. 34 at 7. Defendants cite no authority requiring this Court to construe the contract claim advanced by Plaintiffs as a claim for indemnification. The Court declines to do so. To the extent Defendants argue the contract claim should be dismissed for failure to plead damages, the Court disagrees. Contrary to the Defendants' characterization, Plaintiffs do not seek to recover for a single clerical error. While Defendants may prove correct that Plaintiffs have misattributed damages to Defendants' alleged breach which were caused by Plaintiffs' own conduct, this does not lead to the conclusion that Plaintiffs were not damaged by the alleged breach of Defendants at all. Accordingly, the Court will not dismiss on the basis of this argument.

For the reasons above, the Court DENIES Defendants' motion to dismiss as to the contract claims.

*Count I Negligence by Empowered*

"To establish a prima facie case of negligence under New York law, 'a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom.'" *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006) (quoting *Solomon ex rel. Solomon v. City of New York*, 66 N.Y.2d 1026, 1027 (1985)). It is well established that "[a] simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated. This legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract." *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 949 F. Supp. 2d 486, 518 (S.D.N.Y. 2013) (citing *Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 70 N.Y.2d 382, 289, 521 N.Y.S.2d 653, 516 N.E.2d 190 (1987)). "Where the conduct alleged breaches a legal duty which exists independent of contractual relations between the parties a plaintiff may sue in tort. If the only interest at stake is that of holding the defendant to a promise, the courts have said that the plaintiff may not transmogrify the contract claim into one for tort. But if in addition there is an interest in protecting the plaintiff from other kinds of harm, the plaintiff may recover in tort whether or not he has a valid claim for breach of contract." *Hargrave v. Oki Nursery, Inc.*, 636 F.2d 897, 899 (2d Cir. 1980) (citations and internal quotations omitted).

Here, Plaintiffs plead no duty that is distinct from Empowered's duty to perform under the Agreement. Rather, the alleged breaches of the duty of care—failing to complete the required audits and flag noncompliance—are exactly the conduct complained of as breaches of contractual obligations. In an attempt to assert a duty independent of the Agreement, Plaintiffs argue in their Opposition that human resources consultants are subject to a professional duty of care akin to that imposed on insurance brokers, agents and real estate appraisers. See Opp. at 10-14. "In New York, a 'professional' is defined as someone that possesses some of the following

8

qualities: 'extensive formal learning and training, licensure and regulation indicating a qualification to practice, a code of conduct imposing standards beyond those accepted in the marketplace and a system of discipline for violation of those standards." *Houbigant, Inc. v. Dev. Specialists, Inc.*, 229 F. Supp. 2d 208, 217 (S.D.N.Y. 2002) (quoting *Chase Scientific Research, Inc. v. NIA Group, Inc.*, 96 N.Y.2d 20, 29, 725 N.Y.S.2d 592, 749 N.E.2d 161 (2001)). Plaintiffs' attempt to argue a professional duty fails because "[t]he [Amended] Complaint does not plead any of the recognized criteria for professional status". *Id*.

In sum, because Plaintiffs have not pleaded a negligence claim distinct from their claim in contract, the claim for negligence must be dismissed.

*Count III Fraud and Deceit by Diehl and Empowered*

"A New York common law fraud is defined as a representation of fact which is untrue and either known by defendant to be untrue or recklessly made, which is offered to deceive and to induce the other party to act upon it, and which causes injury." *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 104 (2d Cir. 2001). Therefore, in an action to recover damages for fraud under New York law, the plaintiff must allege:

> (1) a misrepresentation or a material omission of fact which was false and known to be false by defendant; (2) made for the purpose of inducing the other party to rely upon it; (3) justifiable reliance of the other party on the misrepresentation or material omission; and (4) injury.

*AUSA Life Ins. Co. v. Ernst and Young*, 206 F.3d 202, 208 (2d Cir. 2000) (citing *Lama Holding Co. v. Smith Barney, Inc.*, 88 N.Y.2d 413, 421, 668 N.E.2d 1370, 646 N.Y.S.2d 76 (1996)).

The Amended Complaint alleges that the following representations by Diehl were fraudulent: "she was extensively experienced in restaurant management for not less than 5 years", AC ¶ 110; "she had been in charge of HR at a New York based hospitality group for

9

several years after that, during which time she had overseen all HR systems and compliance for thousands of restaurant employees". AC ¶ 111; "she was more than sufficiently knowledgeable in the specialized field of hospitality HR to correctly complete all required employee paperwork in order to make [the paperwork] fully wage and hour compliant", AC ¶ 112; "she was more than sufficiently knowledgeable in the specialized field of hospitality HR to correctly audit all required employee paperwork in order to make sure [the paperwork] was fully wage and hour compliant, and to make any necessary corrections", AC ¶ 113; and, "she was more than sufficiently knowledgeable in the specialized field of hospitality HR to put [the restaurants] into full wage and hour compliance", AC ¶ 114.[1]

Defendants contend that Plaintiffs' fraud and deceit claim must be dismissed because Plaintiffs cannot establish any misrepresentations. This is because, according to Defendants, Diehl "honestly and with good faith negotiated the terms of the Agreement and truthfully provided Holdings with Diehl's prior work experience and her plans for Empowered to perform the requested human resources functions for Holdings". Reply at 6. To the degree this argument invites the Court to do other than assume Plaintiffs' allegations are true, this Court is not permitted to do so on a motion to dismiss.

---

[1] Defendants initially argued that Plaintiffs' Fraud and Deceit claim seeks to recover under a theory that Defendants did not intend to perform when they entered the contract, and should be dismissed as duplicative of the underlying breach of contract claim. Plaintiffs concede that such a claim would be duplicative of the breach of contract claim and properly dismissed. ECF No. 31 at 18-19. However, Plaintiffs clarify that they are proceeding on a theory of fraud in the inducement. Defendants do not dispute that such a claim is distinct from a breach of contract claim. *See BanxCorp v. Costco Wholesale Corp.*, 723 F. Supp 2d 596, 619 (S.D.N.Y. 2010). The elements of a "fraudulent inducement" claim are functionally equivalent to the elements of a general fraud claim. *See*, *e.g.*, *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 415-16 (2d Cir. 2006). Accordingly, the Court need not consider this issue further.

Still, the Court may properly consider whether Plaintiffs have sufficiently pleaded misstatements of present fact by Diehl. *See Intelligen Power Sys., LLC v. dVentus Techs. LLC*, 2015 U.S. Dist. LEXIS 71078, at *24 (S.D.N.Y. June 2, 2015) ("[T]here is a key distinction between a 'misrepresentation of present fact,' which is actionable, and 'a misrepresentation of future intent to perform under the contract,' which merges with the contract and thus cannot support a separate fraud claim".) The Court reaches different conclusions as to two sets of alleged misstatements by Diehl. On the one hand are Plaintiffs' allegations that Diehl's statements about her prior experience—that she had 5 years of experience and had overseen compliance for thousands of employees—are misrepresentations. Plaintiffs plead no facts tending to show that the statements about the time Diehl spent in the industry or the number of employees for which she managed compliance were false. Taken alone, these allegations are not pleaded with sufficient particularity to support of fraud claim.

However, Plaintiffs also plead that Diehl made misrepresentations regarding her level of experience and competence, as well as her ability to complete and audit paper work to comply with wage and hour laws, and otherwise put La Pecora Bianca Nomad and La Precora Bianca Midtown into compliance therewith. These are statements of present fact that may support a claim of fraud. *See e.g.*, *Intelligen Power Sys., LLC v. dVentus Techs. LLC*, 2015 U.S. Dist. LEXIS 71078, at *29-30 (S.D.N.Y. June 2, 2015) (concluding misstatements including those regarding the engineering expertise of dVentus executive were statements of present fact that supported a claim for fraudulent inducement). Plaintiffs allege these statements were known to be false by Diehl, or, in the alternative, exaggerated her ability to such an extent they showed reckless disregard for the truth. Plaintiffs further allege that Diehl's lack of knowledge was demonstrated by her failure to fill out paperwork properly, making mistakes a competent person

11

would not. AC ¶¶ 43-48. The juxtaposition of Diehl's initial representations and her alleged subsequent incompetent performance sufficiently pleads that Diehl's initial representations prior to entry of the contract were false or made with reckless disregard for the truth. The Court concludes this sufficiently alleges actionable misstatements at this early stage of the case[2].

Defendants also argue that Plaintiffs fail to plead scienter. A complaint may give rise to a sufficient inference of fraudulent intent in two ways: (1) by alleging a motive and clear opportunity to commit fraud; and (2) where motive is not apparent, by identifying circumstances "indicating conscious behavior" by the defendant. *Powers v. British Vita, P.L.C.,* 57 F.3d 176, 184 (2d Cir. 1995) (citations omitted). Though Rule 9(b) of the Federal Rules requires a heightened pleading standard for allegations of fraud, "great specificity [is] not required with respect to . . . allegations of . . . scienter." *Cohen v. Koenig*, 25 F.3d 1168, 1173 (2d Cir. 1994) (citing *Connecticut National Bank v. Fluor Corp.*, 808 F.2d 957, 962 (2d Cir. 1987) (ellipses in original)). Plaintiffs have only the "burden of pleading circumstances that provide at least a minimal factual basis for their conclusory allegations of scienter." *Id.* Just as the juxtaposition of Diehl's initial representations and her alleged subsequent incompetent performance sufficiently

---

[2] Defendants cite two cases to argue that Diehl's assessments of her abilities and successes are non-actionable statements of opinion that cannot be a predicate for fraud: *Greenberg v. Chrust,* 282 F. Supp. 2d 112, 121 (S.D.N.Y. 2003) and *Sudul v. Computer Outsourcing Servs., Inc.,* 917 F.Supp. 1033, 1044 (S.D.N.Y.1996). Those cases are distinguishable by their procedural posture. *Greenburg* is at summary judgment. *Sudul* is post-trial. Assuming Defendants are right that these cases relate to statements comparable to those made by Diehl, in both *Greenberg* and *Sudul* the plaintiffs were allowed to proceed to advanced stages of litigation before the Court rejected them. Indeed, at the a motion to dismiss stage, the *Greenburg* Court concluded that the "misrepresentation of [defendant's] employment background and business acumen (*i.e.* that he resigned his position at Winstar, that he successfully aided small companies, and that he managed a successful hedge fund) satisf[ied] the requirements for a fraud claim." *Greenberg v. Chrust*, 198 F. Supp. 2d 578, 582 (S.D.N.Y. 2002).

pleads misstatements, so too does the juxtaposition sufficiently demonstrate conscious behavior by Diehl at this stage. Accordingly, the Court declines to dismiss for failure to plead scienter.

Finally, Defendants argue that Plaintiffs cannot prove injury from any alleged fraud because Plaintiffs voluntarily settled the state class action, were never found liable, and Plaintiffs were responsible for any damage because some of the wage and hour violations predate Defendant's contract with Plaintiffs. The Court rejects this argument for the same reasons it rejected Defendants' related argument made in the context of the contract claim. Accepting Plaintiffs' allegations as true, they have sufficiently pleaded injury based on the alleged fraud—even if all of their injury is not attributable to the alleged fraud.

Defendants do not dispute that Plaintiffs sufficiently pleaded that the alleged misstatements were made to induce Holdings to enter the contract or that Holdings reasonably relied on the representations. Accordingly, the Court DENIES Defendants' motion as to the Fraud and Deceit Claim.

## CONCLUSION

For the reasons above, the Court hereby GRANTS Defendants' motion to dismiss as to Count I. However, the Court DENIES the motion to dismiss as to Counts II and III.

**SO ORDERED.**
**Dated: March 25, 2021**
    **New York, New York**

    **ANDREW L. CARTER, JR.**
    **United States District Judge**